IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VISUAL COMMUNICATIONS, INC., : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 14-3854 |
| ASSUREX HEALTH, INC. : | |
| : | |
| Defendant. : | |

MEMORANDUM

BUCKWALTER, S. J.                                                                          September 18, 2014

Currently pending before the Court is the Motion by Defendant AssureRx Health, Inc. ("Defendant") to Dismiss Plaintiff Visual Communications, Inc. ("Plaintiff")'s Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Motion is granted.

I.      FACTUAL BACKGROUND

Plaintiff is a business corporation with its principal place of business in Aston, Pennsylvania, and is engaged in the business of designing, producing, shipping, installing, and dismantling trade show exhibits, trade show graphics, and related components for a wide variety of industries.  (Am. Compl. ¶ 3.)  Plaintiff's designs depict an overall look for exhibits, and Plaintiff employs exhibit designers and graphic artists who render the designs and artwork that Plaintiff presents to its customers.  (Id. ¶ 8.)  Defendant is a business corporation with its principal place of business in Mason, Ohio, and is a "personalized medicine company dedicated to helping clinicians determine the right drug for individual patients suffering from behavioral

health conditions," and also supplies "laboratory-developed demonic tests" which serve as "a clinical treatment support tool" for the medical industry "in advance of making a medication decision for [the] patient."  (Id. ¶ 4.)

Defendant's representatives approached Plaintiff in the fall of 2012 and asked Plaintiff to show them its custom rental system for use at trade shows because they hoped to save money and avoid the cost of building a new trade show exhibit.  (Id. ¶ 9.)  Plaintiff presented Defendant's representatives with several ideas, of which Defendant's representatives liked three renderings entitled Concepts 1, 2, and 3.  (Id. ¶ 9.)  Plaintiff asserts that these "Concepts" were developed over many months and resulted from a substantial commitment of resources, research, and effort from Plaintiff's sales and design teams.  (Id.)  Each of the three concepts included a proposed layout, a center conference area, custom kiosks with graphics, and a hanging sign.  (Id. ¶ 10.)  The concepts differ from each other in that the hanging sign was depicted either as a circular ring, a pinwheel, or a blade.  (Id.)  In connection with the early presentations, Plaintiff provided Defendant with a series of renderings regarding the color, shape, size, and layout of the graphics and of the kiosks depicted in the three concepts.  (Id.)  Plaintiff considers those three concepts to be the "Design" referenced throughout the Amended Complaint.  (Id.)

Shortly after Plaintiff's presentations, Defendant rented for a fee Plaintiff's proprietary custom rental system, which Plaintiff developed from the Design, and used it at several trade shows or conferences throughout 2013.  (Id. ¶ 11.)  Plaintiff also produced a set of graphics, which Plaintiff considers artwork, for Defendant's use that was compatible with the rental system, and which Defendant also used for trade shows and conferences throughout the United States in May, June, September, October, and November of 2013.  (Id.)

After the November 2013 event concluded, Defendant's representatives informed Plaintiff that they were "going in a different direction," and asked Plaintiff to ship to them their exhibit graphics and fabrics. (Id. ¶ 12.) Plaintiff advised Defendant that the graphics and fabrics were only compatible with Plaintiff's custom rental system, but Defendant still requested them and they were subsequently delivered to Defendant. (Id.) According to Plaintiff, that was the end of the business relationship between it and Defendant. (Id. ¶ 13.) Defendant never purchased the custom rental system nor the Design of the rental system. (Id. ¶ 12.) Plaintiff asserts that the Design was never licensed to Defendant, and that Defendant never requested or purchased a license to copy the Design from Plaintiff. (Id.)

On May 2, 2014, Plaintiff was overseeing the installation of its custom rental system for another of its customers, Shire Pharmaceuticals ("Shire"), at the American Psychiatric Association ("APA")'s annual meeting at the Jacob Javits Convention Center in New York, New York. (Id. ¶ 13.) There, Plaintiff observed "to its great consternation" that Defendant had "appropriated the Design for its pecuniary benefit by having had a third party construct a trade show exhibit which was and is identical to [Plaintiff]'s custom rental system and was produced entirely and exclusively from the creative work reflected in the Design."[1] (Id.) Plaintiff "was

---

[1] Plaintiff includes additional facts in its Response to Defendant's Motion to Dismiss that were absent from the Amended Complaint. Plaintiff asserts that "[s]tandard procedure for Visual is to place its copyright notice on all such renderings before they are presented to the customer." (Pl.'s Resp. Opp'n Mot. Dismiss 1.) Plaintiff apparently deviated from its standard procedure, however, as the Design that Defendant is alleged to have infringed was not registered as copyrighted until after Plaintiff submitted its copyright application in June 2014.
    Somewhat in conflict with the facts and sequence of events Plaintiff set forth in the Amended Complaint, Plaintiff now maintains that Defendant began doing business with Plaintiff in early 2013 by renting a trade show exhibit to save money by avoiding the cost of having a new exhibit built. (Pl.'s Resp. Opp'n Mot. Dismiss 1.) Plaintiff states that it presented Defendant with three designs for the construction of a new exhibit, with minor variations between them, in early 2013. (Id.) However, Plaintiff also asserts that "the Design itself (with the three options) was presented to [Defendant] after the initial meeting in the fall of 2012." (Pl.'s Resp. Opp'n

further distressed by the fact that [Defendant's new] trade show exhibit was virtually indistinguishable from the Visual custom rental system being used by Shire at the said APA meeting, and was installed in close proximity to the Shire exhibit, thereby detracting from the uniqueness of the Shire exhibit and jeopardizing the relationship between Visual and Shire." (Id.)  According to Plaintiff, despite Plaintiff's repeated demands, Defendant has refused to discontinue the use of Plaintiff's Design, compensate Plaintiff for the appropriation of its Design, or agree to refrain from using its new trade show exhibit in close proximity to the Shire exhibit at future marketing events.  (Id. ¶ 14.)

Plaintiff initiated the present litigation on July 1, 2014, setting forth three causes of action: (1) copyright infringement pursuant to 17 U.S.C. § 502, et seq.; (2) conversion; and (3) quantum meruit.  (Am. Compl. ¶¶ 16–26.)  The essence of these claims is that Plaintiff is entitled to injunctive relief and damages because of Defendant's use and infringement of the Design for its pecuniary benefit for which Plaintiff has not been compensated.  Defendant filed a Motion to Dismiss on July 14, 2014.  Plaintiff responded July 25, 2014.  Defendant submitted a Reply on July 30, 2014.  Plaintiff submitted its Sur-Reply on September 3, 2014.  Defendant submitted its Response to Plaintiff's Sur-Reply on September 8, 2014.  The Motion to Dismiss is now ripe for judicial consideration.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S.

---

Mot. Dismiss 7.)  Plaintiff states that Defendant chose not to have a new exhibit built, and in early 2014, "there was an uneventful parting of the ways by the two parties."  (Id.)

At this Motion to Dismiss stage, the Court will rely only on the facts and dates set forth in the Amended Complaint.

544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008

WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III.   DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety due to a lack of foundation under Rule 12(b)(6), and moves to dismiss Plaintiff's state law claims on the grounds of preemption and lack of subject matter jurisdiction.  Defendant also asks this Court to award its attorney's fees pursuant to 17 U.S.C. § 505.  Having considered the Amended Complaint and the parties' briefs, the Court finds that Plaintiff has not sufficiently pled copyright infringement and will grant Defendant's Motion to Dismiss Plaintiff's sole federal claim.  Plaintiff's state law claims of conversion and quantum meruit are preempted by federal copyright law and, accordingly, the Court will grant Defendant's Motion to Dismiss with respect to both of Plaintiff's state law claims.

#### A.  Copyright Infringement

In the Amended Complaint, Plaintiff alleges that Defendant's actions pertaining to its use of the trade show exhibit constructed by a third party infringe its copyrighted Design and violate 17 U.S.C. § 502, et seq.  Specifically, Plaintiff alleges that Defendant "has had access to the Design by virtue of the fact that the Design was the basis for the Visual custom rental system which was rented by Assurex on several occasions [and that] Visual owns all right, title and

interest in the Design." (Am. Compl. ¶ 17.) Plaintiff demands that this Court issue an injunction (a) prohibiting Defendant from hereafter using its recently constructed trade show exhibit at any trade show, conference, meeting, or other public event; (b) declaring that any use by Defendant of its recently constructed trade show exhibit infringes on Plaintiff's Design; and (c) granting other equitable relief which this Court deems just and proper. (Id., "Wherefore" Clause.)

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Plaintiff has established the first element by providing the Court with a copy of the Copyright Registration Certificate.[2] It is the second element, "copying," that Defendant argues is at issue here.

As discussed above, a complaint does not show an entitlement to relief when the facts alleged do not permit the court to infer more than the mere possibility of misconduct. See Iqbal, 556 U.S. at 679. A complaint is sufficient when (1) its factual allegations provide notice to the defendant; (2) it alleges facts suggestive of the proscribed conduct; and (3) its factual allegations are enough "to raise a right to relief above the speculative level." Phillips, 515 F.3d at 232–34 (quoting Twombly, 550 U.S. at 555)).

---

[2] Defendant originally moved to dismiss Plaintiff's copyright claim on two grounds: (1) Plaintiff lacks a copyright registration for "its purported 'trade show exhibit design,'" which Defendant argues prevents Plaintiff from making a copyright infringement claim based on both the plain language of 17 U.S.C. § 411(a) and Third Circuit precedent; and (2) even if Plaintiff had a registration, it has not pled sufficient facts to demonstrate that Defendant copied original, protectable elements of any design that may be eligible for copyright protection, which is a prerequisite to state a claim of copyright infringement. Plaintiff has now received a copyright registration certificate, effective June 12, 2014, for the two dimensional drawing for which it sought copyright registration. (See Pl.'s Sur-Reply Ex. A, Certificate of Registration.) Accordingly the Court will not address Defendant's argument for dismissal of Plaintiff's Amended Complaint on the basis of registration, and will only address Defendant's insufficient pleading argument for dismissal of the Amended Complaint.

Defendant argues that Plaintiff has not pled facts sufficient for Defendant or the Court to identify precisely either what Plaintiff claims to be covered by copyright, or how Defendant has "copied" any such protectable elements in an actionable manner—both of which are necessary elements of a prima facie case of copyright infringement.  (Def.'s Mem. Supp. Mot. Dismiss 4, 6.)  Plaintiff responds by arguing that its protected work is a two dimensional design from which a three dimensional trade show exhibit could be manufactured, and not "the three dimensional trade show exhibit itself, which [Defendant] sets up as a straw man for its irrelevant arguments."  (Pl.'s Resp. Opp'n Mot. Dismiss 6.)  According to Plaintiff, the "new three dimensional exhibit manufactured for [Defendant] by a third party is, instead, the demonstrable evidence that [Defendant] copied the Design and sent it to a third party for manufacture, since no one could have produced the exhibit without relying entirely on the Design."  (Id.)  Plaintiff further claims that because Defendant's new exhibit "was virtually identical to the Design, the conclusion was inescapable that the Design presented to [Defendant] was copied by [Defendant] and provided to a third party in violation of [Plaintiff]'s copyright."  (Pl.'s Resp. Opp'n Mot. Dismiss 2.)  Plaintiff also maintains that "the appearance of the new exhibit itself is the proof [Plaintiff] will use to establish the elements of its cause of action."  (Id. at  10.)  Finally, Plaintiff argues that "[t]he allegations in the Amended Complaint regarding the appearance of the new Assurex exhibit establish that, <u>because</u> the appearance of the exhibit is indistinguishable from the Design in question, Assurex not only had to have possession of the Design but also copied it for the purpose of forwarding it to its contractor."  (Id. (emphasis in original).)

In the Amended Complaint, Plaintiff alleges the following with regard to the copyright infringement claim:

(1) Defendant "appropriated for its pecuniary gain the original trade show exhibit design created by [Plaintiff]." (Am. Compl. ¶ 1.)
(2) Plaintiff "presented [Defendant's representatives] with several ideas, and they liked the designs depicted in three renderings . . . ." (Id. ¶ 9.)
(3) Plaintiff "provided [Defendant] in connection with those early presentations a series of renderings with regard to the color, shape, size and layout of the graphics and the kiosks depicted in the three concepts." (Id. ¶ 10.)
(4) Plaintiff observed that Defendant "had appropriated the Design for its pecuniary benefit by having had a third party construct a trade show exhibit which was and is identical to [Plaintiff's] custom rental system and was produced entirely and exclusively from the creative work reflected in the Design." (Id. ¶ 13.)
(5) Defendant "has had access to the Design by virtue of the fact that the Design was the basis for the Visual custom rental system which was rented by [Defendant] on several occasions." (Id. ¶ 17.)

These allegations do not indicate whether the presentations were written, such that a copy of the Design would have been provided to Defendant; whether Plaintiff presented the ideas by using hard copies of the Design that Defendant may have retained; or whether the "renderings" Plaintiff provided to Defendant are the same as the Design for which Plaintiff subsequently sought copyright protection, or if they were ever provided in hard copy. In the Amended Complaint, Plaintiff does not allege that Defendant ever actually had physical possession of the Design, copied it in some way, or provided any copies of it to the third party that constructed the trade show exhibit Plaintiff later observed Defendant using in New York. Paragraph 17 of Plaintiff's Amended Complaint, the copyright infringement count, draws conclusions that Defendant had access to Plaintiff's Design "by virtue of the fact" that the Design was the basis for the custom rental system, without actually alleging that Defendant had actual access to or

possession of the Design, and without alleging that Defendant committed any "copying."[3] Plaintiff argues that the conclusion is inescapable that Defendant must have copied the Design because no one could have constructed a similar exhibit without it. But there are numerous ways the third party could have constructed a similar exhibit for Defendant without infringing Plaintiff's copyright—Defendant could have taken photographs of Plaintiff's custom rental system on one of the "several occasions" Defendant rented it; Defendant could have described it to the third party; or Defendant could have given a third party its graphics and fabrics, which Plaintiff provided to Defendant after their business relationship ended, thereby enabling the third party to reverse engineer a three-dimensional exhibit which would accommodate those graphics and fabrics. Plaintiff's conclusory and speculative allegations in the Amended Complaint are simply not enough to raise more than the mere possibility of misconduct and do not entitle Plaintiff to relief. Plaintiff argues that the "existence and appearance" of Defendant's trade show exhibit is sufficient to establish that Defendant had access to the Design, copied the Design and sent it to a third party, and that there is substantial similarity between the original and the copy. (Pl.'s Resp. Opp'n Mot. Dismiss 10.) Plaintiff's inferences and conclusions about the appearance of Defendant's exhibit, however, do not satisfy the pleading requirements for adequately stating a claim of copyright infringement. Accordingly, Defendant's Motion to

---

[3] Plaintiff also relies on <u>Bouchat v. Baltimore Ravens, Inc.</u> for the proposition that "direct evidence" of copying is not required to establish an infringement. <u>Bouchat</u>, 241 F.3d 350, 354 (4th Cir. 2000). In that case, the court found that circumstantial evidence of access to the work and substantial similarity between the original work and the copy was enough to establish infringement. <u>Id.</u> Here, however, Plaintiff has not alleged that Defendant had access to the Design itself—Plaintiff argues instead that Defendant had access to the Design "by virtue of" Defendant's rental of the three dimensional trade show exhibit, which is based on the Design. In the absence of an allegation that Defendant had access to the two-dimensional Design, rather than the three-dimensional trade show exhibit, Plaintiff has not provided the type of circumstantial evidence at issue in <u>Bouchat</u>.

Dismiss with respect to Plaintiff's copyright infringement claim is granted and that claim is dismissed.

Nonetheless, it is well-established that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Dismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility. Id. at 236. This opportunity to amend must be offered, even if the plaintiff does not specifically make such a request. Id. at 235. Plaintiff's copyright infringement claim, therefore, is dismissed without prejudice.

### B. Plaintiff's State Law Claims

The Amended Complaint also contains two state law claims for conversion and quantum meruit. Plaintiff's conversion claim alleges that as a consequence of Defendant's actions, Defendant deliberately and knowingly appropriated the Design that Plaintiff created for its pecuniary benefit without Plaintiff's consent and without compensating Plaintiff for use of the Design. (Am. Compl. ¶ 24.) Plaintiff's quantum meruit claim alleges that Defendant knowingly and willingly received a pecuniary benefit from Plaintiff for which Plaintiff has not been compensated. (Am. Compl. ¶ 26.)

Defendant argues that since Plaintiff's copyright infringement claim must be dismissed, the Court lacks subject matter jurisdiction over Plaintiff's remaining state law claims, neither of which presents a federal question which would support subject matter jurisdiction under 28 U.S.C. § 1331. Defendant further argues that Plaintiff's Amended Complaint does not assert sufficient facts to establish diversity jurisdiction under 28 U.S.C. § 1332(a). Accordingly, Defendant argues, the Court should dismiss the remainder of Plaintiff's Amended Complaint for

lack of subject matter jurisdiction.  If Plaintiff's federal claim were being dismissed with prejudice, the Court would normally decline to exercise its supplemental jurisdiction over Plaintiff's state law claims and dismiss them as well.  However, as Plaintiff's federal claim is being dismissed without prejudice and Plaintiff's Amended Complaint could potentially be amended and refiled, the Court addresses Defendant's preemption arguments and finds that Plaintiff's conversion and quantum meruit claims are preempted for the reasons discussed below.

Defendant argues that to the extent Plaintiff's conversion and quantum meruit claims seek relief based solely on Defendant's alleged acts of copyright infringement, those claims are preempted under 17 U.S.C. § 301 and must be dismissed.  Plaintiff responds by criticizing Defendant's alternative arguments as "inherently contradictory," and that while the "linchpin of this case is the copyright infringement . . . of [Plaintiff's] creative work . . . by adding its common law claims against [Defendant], [Plaintiff] properly protects itself against the possibility that the Design will ultimately be found to be non-copyrightable, at which point the [remedies under the Copyright Act] would be unavailable [and Plaintiff] would then be relegated to pursuing its state law claims."  (Pl.'s Resp. Opp'n Mot. Dismiss 10–11.)  Essentially, Plaintiff argues that if its Design is not copyrightable, then its state law claims cannot be preempted; on the other hand, if its Design is copyrightable, then its conversion and quantum meruit claims contain "extra elements" that do not trigger preemption.  (Id. at 11–12.)

Section 301 provides, in pertinent part:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title . . . .  No person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301(a).

"Congress clearly expressed its purpose: 'the intention of Section 301 is to preempt and abolish any rights under common law and state statutes that are equivalent to copyright and extend to works within the Federal Copyright Law.' H.R. Rep. No. 1476, 94th Cong. 2d Sess. 130, reprinted in 1976 U.S.C.C.A.N. 5659, 5746.  However, nothing within the Copyright Act annuls or limits any rights or remedies under the common law statutes of any state 'with respect to activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106.'" Tegg Corp. v. Beckstrom Elec. Co., 650 F. Supp. 2d 413, 420 (W.D. Pa. 2008) (quoting 17 U.S.C. § 301(b)(3)).

Despite the clearly stated purpose of Section 301, "federal courts must still grapple with whether a particular cause of action is preempted because any direct reference to specific actions was deleted from the main bill."  Id. (citing Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002).  "In the Third Circuit, 'if a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then . . . federal law will not preempt the state action.'" CollegeSource, Inc. v. AcademyOne, Inc., No. Civ.A.10-3542, 2012 WL 5269213, at *9 (E.D. Pa. Oct. 25, 2012) (quoting Dun and Bradstreet, 307 F.3d at 217).  In other words, "a state law claim that invokes rights 'that are equivalent to the exclusive rights within the general scope of copyright' is subject to preemption." Brown v. Suburban Life Publ'g, LLC, No. Civ.A.10-245, 2011 WL 1465423 at * 6 (E.D. Pa. Apr. 15, 2011) (quoting Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir. 1999)).

1. **Conversion**

Defendant argues that Plaintiff's conversion claim must be dismissed as preempted because it does not contain an "extra element" beyond what would be required to sustain an infringement claim, and is "merely a repackaging of [Plaintiff's] copyright claims." (Def.'s Mem. Supp. Mot. Dismiss 14.)  Plaintiff responds by arguing that its conversion claim does have an extra element, relying on a Middle District of Pennsylvania case where the "use" of the converted chattel without authority to do so comprised an extra element.[4]  (Pl.'s Resp. Opp'n Mot. Dismiss 12.)  Defendant argues that Plaintiff has not sufficiently pled conversion, because Plaintiff has not alleged, and according to Defendant cannot allege, "that Defendant wrongfully possesses a chattel—a physical embodiment of the work, namely, the two-dimensional artwork in which [Plaintiff] claims copyright ownership [and] the only 'chattel' at issue was constructed by [Defendant], at its own expense."  (Def.'s Reply Supp. Mot. Dismiss 8.)  Therefore, according to Defendant, Plaintiff "has not and cannot allege it has been deprived of its own use of a physical chattel."  (Id.)

"Conversion is 'an act of willful interference with the dominion or control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession.'"  Brown, 2011 WL 146523, at *6 (quoting Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979) (applying Pennsylvania law)).  While the Third Circuit has not opined on the matter, other courts in this District have found that conversion claims are preempted by the Copyright Act.  See, e.g., Harris v. Winfrey, No. Civ.A.10-5655, 2011 WL 1003807, at *3–4 (E.D. Pa. Mar. 18, 2011) (finding that the plaintiff's claims for conversion and unjust

---

[4] See Scranton Times, L.P. v. Wilkes-Barre Pub. Co., No. Civ.A.08-2135, 2009 WL 3100963, at *8 (M.D. Pa. Sept. 23, 2011) (finding that a conversion claim was not preempted by the Copyright Act because the plaintiff claimed that the defendant "used" the chattels in question without the authority to do so, and therefore the claim had the requisite "extra element" to avoid preemption).

enrichment, or quantum meruit, were preempted because they did not contain an extra element); Brown, 2011 WL 146523, at *6 (finding that the plaintiff's conversion claim was preempted because it sought to protect the same rights as the copyright claim and failed the extra element test); see also Apparel Bus. Sys., LLC v. Tom James Co., No. Civ.A.06-1092, 2008 WL 858754 at *18 n.9 (E.D. Pa. Mar. 28, 2008) (declining to rule on preemption issue where the parties did not raise it but noting that "[t]he plaintiff's conversion claim arises from the alleged copying and misuse of the work, which is equivalent to a copyright claim. The plaintiff's claim does not have an extra element (such as breach of trust) that takes it beyond the scope of copyright protection.").

In this matter, Plaintiff's claim for conversion alleges that Defendant deliberately and knowingly appropriated the Design Plaintiff created for its pecuniary benefit without Plaintiff's consent and without compensating Plaintiff for use of the Design—this is another way of claiming copyright infringement. Accordingly, Plaintiff's conversion claim is preempted by the Copyright Act and must be dismissed with prejudice.

### 2. **Quantum Meruit**

Defendant argues that Plaintiff's quantum meruit claim is also preempted by the Copyright Act and must therefore be dismissed. Plaintiff responds by arguing that its quantum meruit claim has an extra element beyond copyright infringement because "[t]he benefit conferred on [Defendant] which used the Design to have its new exhibit built goes well beyond the issue of whether its creative work was copied in violation of the Copyright Act. The Design involved a service provided with intrinsic value for which [Plaintiff] deserves to be compensated." (Pl.'s Resp. Opp'n Mot. Dismiss 12.) According to Plaintiff, "as with any other

service provider, [Plaintiff's] act of conferring a benefit on [Defendant] is actionable whether or not the Design is copyrightable." (Id.)

Under Pennsylvania law, quantum meruit is treated as a claim for unjust enrichment, as the two types of claims "are different labels for a quasi-contractual theory of recovery." See Fyk v. Roth, No. Civ.A.94-3826, 1995 WL 290444, at * 2 n.4 (E.D. Pa. May 9, 1995) (internal citations omitted). Among courts within the Third Circuit, "[i]t is clearly established that an action for unjust enrichment is preempted by copyright law because unjust enrichment seeks to compensate the plaintiff for the alleged use and imitation of her protected artwork, which rights are protected by copyright law." (Id. at *2) (internal citations omitted); see also Harris, 2011 WL 1003807, at * 3–4 (finding that unjust enrichment claim was preempted by Copyright Act); College Source Inc., 2012 WL 5269213 at *12 (noting that "[t]he Third Circuit has not yet ruled on whether an additional element exists in unjust enrichment claims" but that "[t]he circuits to consider the issue have held that there is no 'additional element' in unjust enrichment claims stemming from acts that would in and of themselves have violated the Copyright Act.") (internal citations omitted).

Here, Plaintiff alleges that Defendant "knowingly and willingly received a pecuniary benefit from [Plaintiff], for which [Plaintiff] has not been compensated." (Am. Compl. ¶ 26.) Without more, even on the basis of the other facts contained within the Amended Complaint, it is not clear to the Court what benefit—other than not having to independently create the ideas represented in the Design—Defendant is alleged to have taken from Plaintiff. Plaintiff's quantum meruit claim, as set forth in the Amended Complaint, does not contain an "extra element" beyond a traditional copyright infringement claim, because the quantum meruit claim seemingly seeks compensation for Defendant having profited from the use of Plaintiff's drawing

and thus seeks to protect the same rights as those protected by the Copyright Act.  Plaintiff asserts that "[t]he Design involved a service provided with intrinsic value" but without any further elaboration it is unclear to the Court what "service" Plaintiff refers to.  As Plaintiff's quantum meruit claim does not contain an extra element beyond copyright infringement, that claim is preempted and must be dismissed.

### C. Defendant's Request for Attorney's Fees Pursuant to 17 U.S.C. § 505

Defendant requests attorney's fees pursuant to 17 U.S.C. § 505, which provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  "In Fogerty v. Fantasy, 510 U.S. 517, 536 (1994), the Supreme Court directed courts to look to the following list of 'nonexclusive factors that courts should consider in making awards of attorney's fees' which the Third Circuit enunciated in Lieb v. Topstone Industries, Inc., 788 F.2d 151, 156 (3d Cir. 1986): 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Warren Pub. Co. v. Spurlock, No. Civ.A.08-3399, 2010 WL 760311 at *2 (E.D. Pa. Mar. 3, 2010) (quoting Fogerty, 510 U.S. at 535 n.19)  Based on the circumstances in this case, the Court declines to grant Defendant's request for attorney's fees.

### IV. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed in its entirety.  As Plaintiff's copyright claim has not set forth factual allegations sufficient "to raise a right to relief above the speculative level," Twombly,

550 U.S. at 555, that claim is dismissed without prejudice. Plaintiff's state law claims are both preempted by the Copyright Act, and therefore are dismissed with prejudice.

    An appropriate Order follows.